UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

CESAR A. ESPINAL,

                                        Plaintiff,

                 - against -

GLENN S. GOORD, Commissioner of New York
State Department of Correctional Services;
BRIAN MALONE, Inspector General of the New          02 CIV. 8906 (GAY)
York State Department of Correctional Services;
CHRISTOPHER P. ARTUZ, Former Super-
intendent of Green Haven Correctional Facility;
W. TOTTEN, Captain of Green Haven
Correctional Facility; COLEMAN S. WILSON;
KENNETH G. HAFFORD, Correctional Sergeants
of Green Haven Correctional Facility; JERRY W.
SURBER; FRASHER, ROSARIO, AYOTTE,              **DECISION AND ORDER**
MARTUCELLO, Correctional Officers of Green
Haven Correctional Facility; B. RODAS, B. HEALY,
CHAKRAVORTY, Correctional Medical Providers
of Green Haven Correctional Facility; and JOHN/
JANE DOES 1-? In their personal and individual
capicities,

                                        Defendants.
-------------------------------------------------------------------x


       The parties have consented to try this matter before me pursuant to 28 U.S.C. §

636(c).  Plaintiff Cesar Espinal ("plaintiff") brought this action against defendants,

claiming that they, in various capacities, violated his constitutional rights under 42

U.S.C. § 1983.  In particular, plaintiff alleges that all defendants except for defendants

Goord, Malone and Artuz retaliated against him by using excessive force and/or

denying him medical treatment; defendants Surber, Frasher, Rosario and Ayotte (also

denoted as "Ayotle" throughout plaintiff's submissions) used excessive force against

1

him; defendants Wilson and Hafford failed to prevent the assault upon him; all defendants conspired to deny him medical treatment and to harass and assault him; and defendants Goord, Malone and Artuz failed to intervene to prevent assaults upon him and promulgated a custom and/or policy pursuant to which he was subjected to illegal behavior. Before this Court is defendants' motion for summary judgment. For the reasons set forth below, defendants' motion is granted as to plaintiff's first, third, fourth, and fifth claims, as well as plaintiff's apparent Equal Protection claim. Defendants' motion is denied as to plaintiff's second claim, as against defendants Surber and Frasher.

## BACKGROUND

Plaintiff generally alleges the following facts, as taken from his complaint: At about 8:45 a.m. on or about December 17, 1999, plaintiff was involved in a physical altercation with another inmate, Castillo, at Green Haven Correctional Facility, a prison located in Stormville, New York, and administered by the New York State Department of Correctional Services ("DOCS"). As plaintiff was walking away from this incident, he was placed against the wall and searched by Correctional Officer ("C.O.") Dragoon. C.O. Williams then took custody of plaintiff so that he could be taken to the clinic for a 'fight exam'. While plaintiff was being escorted to the clinic, C.O.'s Surber, Rosario, Frasher and Ayotle, along with Sgt. Wilson and several other unnamed C.O.'s, took him away from C.O. Williams and into a room. C.O.'s Surber, Ayotle and Frasher began to slam him against the wall, verbally harass him, struck his face and strip-searched him. After the strip-search, the C.O.'s and Sgt. Wilson continued to verbally harass plaintiff,

striking him in the head and right leg, and repeatedly slamming him against the wall. The C.O.'s finally took plaintiff to the clinic and warned him that he should not tell anyone what had happened.

At the clinic, plaintiff told Nurse Healy that he was beaten up by the C.O.'s, but Nurse Healy disregarded this statement and instead followed the account given to her by C.O. Surber: that plaintiff had been injured from the fight with the other inmate earlier that morning. Dr. Chakravorty then tried to examine plaintiff, but plaintiff refused to be treated by this doctor and asked for another medical provider because he did not like the way Dr. Chakravorty had treated him in the past. Plaintiff did not sign a refusal-of-treatment form, and Dr. Chakravorty refused his request to see another medical provider.

Plaintiff then asked Sgt. Hafford if he could receive treatment from another doctor, and if he could be taken to the mental health unit. Sgt. Hafford denied plaintiff's requests because his medical charts indicated that he had refused medical treatment, and there was no indication of plaintiff requiring mental health treatment.

After further verbal harassment by C.O.'s Surber and Ayotle, plaintiff was taken back to his cell, at around 10:30 a.m.. He requested emergency sick-call several times, but was denied this request by C.O. Martucello. Later that evening, at about 6:20 p.m., plaintiff was brought to the clinic where his injuries were re-evaluated and an inmate injury report was prepared; this report listed the injuries to his head, right leg and wrists. Plaintiff filed Inmate Grievance Complaint ("IGC") # GH-43575-99 on December 17, 1999, claiming a retaliatory assault by Officers Surber, "Frashor (sic) and other countless security officers." In his determination dated February 3, 2000,

3

Superintendent Artuz denied the grievance based upon findings that plaintiff was not refused medical treatment, plaintiff refused to receive medical assistance and there was no evidence of unprofessional conduct and threats by the officers. On February 11, 2000, plaintiff signed the appeal form, and on April 5, 2000, his appeal was denied.

On several dates in December 1999, January 2000 and February 2000, plaintiff was scheduled to be seen by the medical department. However, he was not permitted by the C.O.'s and defendant Rodas to leave his cell for these appointments. Plaintiff filed IGC # GH-43725-00 on January 19, 2000, claiming that the facility's medical department was deliberately indifferent to his needs and deprived him medical treatment, and that he was denied medical care by prison officials and medical personnel. In his determination dated March 16, 2000, Superintendent Artuz denied the grievance, stating that plaintiff had been seen thirty-one times since October 1999, and granted the grievance only to the extent that plaintiff continue to be treated as prescribed. On April 4, 2000, plaintiff signed the appeal form, and on April 26, 2000, his appeal was denied.

On November 8, 2002, plaintiff filed the instant complaint, alleging that defendants violated 42 U.S.C. § 1983 when: (1) all defendants except for defendants Goord, Malone and Artuz retaliated against him for exercising his 1st Amendment right to file complaints and lawsuits by assaulting him and interfering with his medical treatment; (2) defendants Surber, Frasher, Rosario and Ayotle used excessive force against him in violation of his 8th Amendment rights; (3) defendants Wilson and Hafford failed to prevent or stop the assaults upon plaintiff, in violation of his 8th and 14th Amendment rights; (4) all defendants conspired to deny plaintiff medical treatment and

4

to harass and assault him, in violation of his 1st, 8th and 14th Amendment rights; and (5) defendants Goord, Malone and Artuz failed to intervene to prevent the assaults upon plaintiff after having actual and/or constructive knowledge of such assaults, and promoted a custom and/or policy under which plaintiff was subjected to illegal behavior, in violation of his 1st, 8th and 14th Amendment rights. Plaintiff also seems to allege that defendants Goord, Malone and Artuz violated his Equal Protection rights.

**DISCUSSION**

I.     SUMMARY JUDGMENT STANDARD

Local Civil Rule 56.1 (former Local Civil Rule 3(g)) reads as follows:

(a) Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for the denial of the motion.

(b) The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

(c) All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

Federal Rule of Civil Procedure 56(c) further provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995); see generally, Celotex Corp. v. Catrett, 477 U.S. 317, 320-23 (1986). "[T]he

mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986).

The Court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved by a finder of fact because they may reasonably be resolved in favor of either party." McNeil v. Aguilos, 831 F. Supp. 1079, 1082 (S.D.N.Y. 1993), aff'd, 107 F.3d 3 (2d Cir. 1996), cert. denied, 117 S. Ct. 1721 (1997), quoting Anderson, 477 U.S. at 250. "The moving party has the burden of identifying the evidence that it believes demonstrates the absence of a genuine issue of material fact." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997), citing Celotex, 477 U.S. at 323.

In deciding whether a genuine issue of material fact exists, "the court is required to draw all inferences in favor of the party against whom summary judgment is sought." Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989). If the opposing party "propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied. Schering Corp. v. Home Ins. Co., 712 F.2d 4, 9-10 (2d Cir. 1983). "On a motion for summary judgment, a court 'cannot try issues of fact; it can only determine whether there are issues to be tried'." Cronin, 46 F. 3d at 203, quoting Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d

Cir. 1992).

Pleadings submitted by *pro se* plaintiffs may be held to "less stringent standards than those applicable to formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). See also Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [the pro se plaintiff's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest."); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) ("special solicitude" is afforded to *pro se* plaintiffs with regards to summary judgment motions). However, *pro se* plaintiffs are not exempt from the "rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983). See also Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (a "pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment" (citing Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991)).

II.     EXHAUSTION

Under the Prison Litigation Reform Act ("PLRA"), a prison inmate who brings a lawsuit about prison life "must exhaust all institutional administrative remedies before commencing a section 1983 action." Freeman v. Goord, 2004 WL 2002927, at *2 (S.D.N.Y. Sept. 8, 2004). Pursuant to 42 U.S.C. § 1997e(a),

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This exhaustion requirement applies to all inmate suits, regardless of the nature of and

allegations in the suits.  See Porter v. Nussle, 534 U.S. 516, 532 (2002).  Furthermore,

the PLRA requires that prison officials be "afford[ed] ... time and opportunity to address

complaints internally."  Porter, 534 U.S. at 524-25.  Therefore, in order for inmates to

properly exhaust their grievances, they "must provide enough information about the

conduct of which they complain to allow prison officials to take appropriate responsive

measures."  Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004).

The New York State DOCS has a well-established, three-tiered administrative

procedure for inmate grievances, called the Inmate Grievance Program ("IGP").  See 7

N.Y.C.R.R. § 701.7.  In accordance with this procedure, an inmate must first present his

complaint to the Inmate Grievance Resolution Committee ("IGRC").  See 7 N.Y.C.R.R. §

701.7(a).  Next, the inmate may appeal the IGRC's determination to the superintendent.

See 7. N.Y.C.R.R. § 701.7(b).  Finally, the inmate may "subsequently appeal the

superintendent's determination to the Central Office Review Committee ("CORC")."

Freeman, 2004 WL 2002927, at *3; see 7 N.Y.C.R.R. § 701.7(c).  All three of these

steps must be completed in order to satisfy the PLRA's exhaustion requirement.

1.    Additional Defendants

In the instant matter, plaintiff exhausted his grievances against defendants

Surber and Frosher by pursuing IGC # GH 43575-99 through appeal to the CORC.

However, neither this grievance, nor IGC # GH 43725-00, named any other individual

defendants.  In IGC # GH 43575-99, plaintiff made vague references to "other countless

security officers."  Decl. of Lisa E. Fleischmann, Exh. J, Grievance.  In IGC # GH 43725-

00, plaintiff only referred to "Green Haven's Medical Dept.," "prison officials," and

8

"medical personal (sic)." Id., at Exh. I, Grievance.

Plaintiff's Section 1983 complaint includes more detail than the two grievances filed in 1999 and 2000. However, the Court finds that "[t]he allegations in [plaintiff's] section 1983 complaint [] are specific and were capable of being addressed in the [Department of Corrections] grievances procedures." Brewer v. Jones, 2004 WL 235269, at *3 (S.D.N.Y. Feb. 5, 2004). Plaintiff's complaint sets forth allegations against additional defendants that were never grieved, nor pursued to exhaustion. See id. "For [defendants] now to have to litigate a federal lawsuit premised on allegations that either were never made below ... would make a mockery of the exhaustion requirement." Luckerson v. Goord, 2002 WL 1628550, at *2 (S.D.N.Y. Jul. 22, 2002).

Although plaintiff now raises more specific allegations against additional specific individual defendants, the Court finds that these allegations were capable of having been raised, investigated and addressed through DOCS' inmate grievance program, particularly given the fact that even now, several years after the alleged incidents took place, plaintiff is able to remember the names of the officers he claims to have taken part in the incidents. Moreover, because DOCS was "never afforded the opportunity to consider, and potentially resolve, these matters prior to the commencement of litigation," the Court finds that plaintiff has not exhausted his claims against defendants other than defendants Surber and Frosher. Therefore, plaintiff's claims against defendants other than defendants Surber and Frasher must be dismissed without prejudice, as required by PLRA section 1997e(a). See Brewer, 2004 WL 235269, at *3. Accordingly, defendants' motion for summary judgment is granted as to plaintiff's first, third, fifth and Equal Protection claims, as against all defendants except for defendants

9

Surber and Frasher.

2. <u>Unexhausted Claims</u>

The Second Circuit Court of Appeals recently determined that the PLRA "does no divest district courts of jurisdiction over actions containing unexhausted claims," thus settling the question of whether or not courts are required, under a 'total exhaustion' rule, to dismiss an inmate action entirely in cases where otherwise viable and fully-exhausted claims exist with unexhausted claims. <u>Ortiz v. McBride</u>, 380 F.3d 649, 656 (2d Cir. 2004). The Court of Appeals concluded that "section 1997e is too ambiguous to sustain the conclusion that Congress intended to require district courts to dismiss any prisoner's action containing one or more unexhausted claims rather than to dismiss only the offending claims." <u>Id.</u>, at 657-58. The Court of Appeals also noted that an inmate's unexhausted section 1983 claims, "once dismissed, are unlikely ever to be revived in district court," thus not raising concerns for judicial economy, and set forth its expectation that "once the district court dismisses the unexhausted claims, it will proceed directly to decide the exhausted claims." <u>Id.</u>, at 662-63. In other words, "a district court is expected ... to address the exhausted claim and dismiss the unexhausted claim without prejudice." <u>Leacock v. City of New York</u>, 2005 WL 323723, at * (S.D.N.Y. Feb, 10, 2005), <u>citing</u> <u>Ortiz</u>, 380 F.3d at 663.

In the case at bar, the only remaining claims are plaintiff's retaliation, excessive force and conspiracy claims, as against defendants Surber and Frosher. Of these, plaintiff has failed to exhaust the last claim wherein he alleges that defendants Surber and Frosher conspired to deny him medical treatment, and to harass and assault him, in

10

violation of his 1ˢᵗ, 8ᵗʰ and 14ᵗʰ Amendment rights. Plaintiff did not assert a complaint of conspiracy in either of the inmate grievance complaints he filed in 1999 and 2000. Thus, the conspiracy claim that he raises in the instant federal lawsuit was never taken through the proper channels provided by the IGP established by DOCS.

Plaintiff also fails to raise a valid argument regarding why he neglected to raise his conspiracy complaint in either of the grievances he filed; in fact, in his reply papers, plaintiff does not address the fact that his conspiracy claim is unexhausted. The Second Circuit Court of Appeals has set forth a three-part inquiry to be used when an inmate seeks to counter a defendant's argument that he failed to exhaust administrative remedies under the PLRA. See Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004). First, the court must determine "whether administrative remedies were in fact available to the prisoner." Id., at 686. This question is an objective one in which the court should ask whether "a similarly situated individual of ordinary firmness [would] have deemed them available." Id., at 688. Next, the court should inquire as to "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." Id., at 686. Finally, if a court finds that administrative remedies were available to the plaintiff, and the second question is answered in the negative, "the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." Id. (citation omitted).

Here, the Court finds that as an inmate at Green Haven Correctional Facility,

administered by the New York State DOCS, plaintiff had the DOCS grievance process available to him at all times. Further, defendants did not forfeit the affirmative defense of plaintiff's non-exhaustion, nor is there any evidence that their own actions inhibited plaintiff's potential exhaustion of the available administrative remedies. Finally, the Court determines that plaintiff has not shown any "special circumstances" that would justify his failure to exhaust his conspiracy claim. Id.

Plaintiff appears to argue that all of his claims – presumably including his conspiracy claim – *are* exhausted because (1) he "wrote letters directly to the facility superintendent and Inspector General's Office;" (2) he could not ascertain the names of the other defendants within the required fourteen-day grievance filing period; (3) the grievance procedure was "an exercise in futility;" and (4) he was only required to "file a complaint with defendant's (sic) supervisor and the supervisor was required to initiate the grievance process." Plt.'s Memo. of Law in Opp., at pp. 2-5. However, the law is clearly established that "the inmate grievance procedures ... do not provide for amended grievances in the form of a letter to an institution's superintendent." Freeman v. Goord, 2004 WL 2709849, at *3 (S.D.N.Y. Nov. 23, 2004). Moreover, a plaintiff is required to exhaust his claims, "even if [he] subjectively believes that exhaustion is futile." Id. See also Giano v. Goord, 250 F.3d 146, 150-51 (2d Cir. 2001) ("the alleged ineffectiveness of the administrative remedies that are available does not absolve a prisoner of his obligation to exhaust such remedies when Congress has specifically mandated that he do so"); Leal v. Johnson, 315 F. Supp.2d 345, 347 (W.D.N.Y. 2004) ("42 U.S.C. § 1997e(a) does not require that the remedies provided by the prison be effective from the prisoner's viewpoint. The statute requires only that the inmate first exhaust the

remedies, however futile such exhaustion might appear to be."); <u>Wagnoon v. Johnson</u>, 2004 WL 583764, at *3 (S.D.N.Y. Mar. 23, 2004) ("Exhaustion of administrative remedies is required even if an inmate believes that such exhaustion would be futile.").

Finally, plaintiff's argument that he could not ascertain the names of the other individual defendants in the time required by the grievance procedures is without merit. As defendants correctly point out, plaintiff could have sought an exemption to the fourteen-day time period after the incident of which he grieves, but he failed to do so. <u>See</u> Plt.'s Exh. 6, Directive 4040, V.A.1. Furthermore, plaintiff appears to have encountered no problems when filing his grievances in 1999 and 2000; there is no evidence before this Court indicating that plaintiff was inhibited from filing additional grievances or otherwise exhausting the administrative remedies made available to him. Therefore, the Court finds that because plaintiff's fourth claim of conspiracy against defendants Surber and Frasher is unexhausted, it must be dismissed without prejudice, and summary judgment granted on this issue in favor of defendants Surber and Frasher.

III.    EXHAUSTED CLAIMS

1.    <u>Retaliation</u>

In order to establish a claim of retaliation, a plaintiff must show: "(1) that his actions were protected by the Constitution or federal law, and (2) that the defendant took some adverse action against him in response to that protected activity." <u>Crawford v. Braun</u>, 2001 WL 127306, at * (S.D.N.Y. Feb. 9, 2001), <u>citing</u> <u>Posr v. Court Officer Shield No. 207</u>, 180 F.3d 409, 418 (2d Cir. 1999).

Retaliation claims by prison inmates "must be treated with skepticism" because "prisoners can claim retaliation for every decision they dislike." Salahuddin v. Mead, 95 Civ. 8581, 2002 WL 1968329, at *3 (S.D.N.Y. Aug. 26, 2002). See Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983); Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). Therefore, a claim of retaliation "must not be wholly conclusory . . . and must include highly detailed factual allegations." Salahuddin, 2002 WL 1968329, at *3 (citing Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) (internal citations omitted). Merely alleging the "ultimate fact of retaliation in a conclusory manner is insufficient." Soto v. Iacovino, 2003 WL 21281762, at *2 (S.D.N.Y. Jun. 4, 2003). Moreover, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001). Where there is no chilling effect upon the exercise of constitutional rights, "the conduct is de minimis, and is outside the ambit of constitutional protection." Dawes, 239 F.3d at 492.

If the plaintiff is able to carry his initial burden, "the defendants must show by a preponderance of the evidence that they would have disciplined the plaintiff 'even in the absence of the protected conduct.'" Graham, 89 F.3d at 79 (quoting Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 287 (1977). State actions taken for both valid and invalid reasons "will not be deemed unconstitutional if the action would have been taken in any event for the constitutionally valid reason[s]." LaBounty v. Gomez, 94 Civ. 3360, 1997 WL 104959, at *5 (S.D.N.Y. Mar. 10, 1997). See also Graham, 89 F.3d at 79. Courts in this Circuit recognize the presumption "that a prison official's acts to maintain order are done for a proper purpose." Rivera v. Senkowski, 62 F.3d 80, 86 (2d Cir.

14

1995).  Therefore, "even assuming retaliatory motive, the defendants would be entitled to summary judgment 'if there were proper, non-retaliatory reasons for [plaintiff's] punishment.'"  Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir. 1998) (quoting Graham, 89 F.3d at 81).

Here, plaintiff alleges that defendants Surber and Frasher retaliated against him because he exercised his First Amendment rights.  On or about June 2, 1998, plaintiff filed a federal lawsuit against several DOCS defendants, including defendant Surber.  See Plt.'s Exh. D.  Subsequently, on or about March 24, 1999, plaintiff sent a letter of complaint to the Superintendent of Green Haven Correctional Facility.  See Plt.'s Exh. 2.  On May 12, 1999, Lieutenant W. Russett, on behalf of Deputy Superintendent G. Schneider, wrote a letter to plaintiff explaining that an "extensive investigation" had taken place, and the findings indicated that "the things that [plaintiff says] happened ... were precipitated by [him] and no one else."  Id.  Plaintiff's federal complaint (No. 93 Civ. 2579) was dismissed by United States District Judge Robert P. Patterson on June 14, 1999.  Plaintiff's retaliation claim stems from the incident on December 17, 1999, when defendants Surber and Frasher allegedly assaulted him and during the course of the assault, shouted at him, "this is what happens to Inmates when they submit law suits (sic) against us."  Complaint, ¶ 11.

A.    Protected Activity

It is well-established that filing a grievance against a prison officer is activity protected by the First and Fourteenth Amendments.  See Graham, 89 F.3d at 80; Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988).  Thus, defendants correctly concede that plaintiff engaged in protected activity when he filed his federal lawsuit in 1998 and

when he wrote his letter of complaint to the Superintendent's office in March 1999.  See

Bounds v. Smith, 430 U.S. 817, 821-32 (1977); Amaker v. Goord, 2002 WL 523371, at

*14 (S.D.N.Y. Mar. 29, 2002).  Accordingly, the Court finds that plaintiff has satisfied the

first element of his retaliation claim.

B.    Adverse Action and Causal Connection

Plaintiff's retaliation claim fails, however, because he has not shown sufficient

evidence from which a jury could infer that defendants acted adversely to him because

he engaged in protected activity.  Some factors that may be considered when

determining whether a causal connection exists between the plaintiff's protected activity

and the alleged retaliatory action include: "(1) the outcome of any hearing concerning

the allegedly retaliatory charges; (2) the inmate's prior disciplinary record; (3) any

statements made by the defendant concerning his motivation; and, (4) the temporal

proximity between the protected activity and the defendant's adverse action."  Williams

v. Muller, 2001 WL 936297, at * (S.D.N.Y. Aug. 17, 2001), citing Colon v. Coughlin, 58

F.3d 865, 872-73 (2d Cir. 1995).  In the case at bar, at least three of these four factors

favor summary judgment for defendants.

First, the record indicates that a thorough hearing was conducted regarding the

December 17, 1999 incident.  See Decl. of Lisa E. Fleischmann, Exh. D ("Proceedings,

12-22-99;" "Proceedings, 12-23-99;" "Proceedings, 12-30-99").  Plaintiff was afforded

the opportunity to question witnesses, including Castillo and C.O. Dragoon.  See id.,

Exh. D ("Proceedings, 12-23-99").  On the final day of these hearings, plaintiff pled

guilty to four of the five charges pending against him: possession of an altered item,

possession of a weapon, possession of contraband, and tampering with property.

See id., Exh. D ("Proceedings, 12-30-99"), at 4-5. Plaintiff pled not guilty to the charge of vandalism and possession of stolen property. See id., Exh. D ("Proceedings, 12-30-99"), at 5. After plaintiff did not present a defense or witnesses, the hearing officer rendered a disposition of guilty on the final charge of vandalism and possession of stolen property. See id., at 8-9. Plaintiff stated that he understood the disposition against him and signed the disposition sheet. See id., at 9. Plaintiff does not now allege that any aspect of this hearing process was tainted or infirm in any manner.

Second, plaintiff's disciplinary record demonstrates a lengthy history of misbehavior, beginning on December 19, 1991 and continuing to at least December 11, 2002. See Plt.'s Exh. 3. The charges against plaintiff include drug possession, fighting, violent conduct, possession of contraband, possession of a weapon, drug use, disobeying a direct order, creating a disturbance, and possession of an altered item. See id. Hearings were conducted with respect to each of these incidents, and plaintiff received a variety of sentences, including keep-lock and loss of privileges such as receiving packages and commissary rights. See id.

Third, the Court notes that the alleged assault upon plaintiff took place on or about December 17, 1999, almost a year and a half after the date on which he filed his federal lawsuit against defendant Surber and others, about nine months after he complained to the Superintendent of Green Haven Correctional Facility about "conspiratorial harassment," and over six months after his 1998 federal lawsuit was dismissed. The Court finds that the time periods between plaintiff's protected activities of filing lawsuits and complaints, and the allegedly retaliatory actions of assault on December 17, 1999, are too lengthy and the temporal relationship too attenuated to

17

establish a causal connection.  See Crawford, 2001 WL 127306, at *6.

Moreover, plaintiff has presented no evidence that defendant Frasher possessed knowledge about the 1998 lawsuit against defendant Surber and others.  Nor has plaintiff demonstrated that Frasher was motivated by a retaliatory animus when he allegedly participated in the December 17, 1999 incident.  Accordingly, plaintiff's retaliation claim must be dismissed, and defendants Surber and Frasher are entitled to summary judgment on plaintiff's retaliation claim.

2.    Excessive Force

Plaintiff complains that defendants Surber and Frasher used excessive force against him on December 17, 1999, in violation of his Eighth Amendment rights. Plaintiff points to the injuries he sustained to his head, face, wrists and right knee. Defendants deny these allegations, and claim that plaintiff's injuries stemmed instead from his own conduct and participation in the physical confrontation with inmate Castillo on December 17, 1999.  Defendants also argue that the injury to plaintiff's right knee was a pre-existing injury, requiring surgery prior to any alleged incidents involving defendants on December 17, 1999.

The Court finds that genuine issues of material fact remain regarding, but not limited to, the cause of plaintiff's injuries sustained on December 17, 1999.  Accordingly, defendants' motion for summary judgment is denied as to plaintiff's excessive force claim.

**CONCLUSION**

For the reasons stated above, defendants' motion for summary judgment is

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CESAR A. ESPINAL,

                                    Plaintiff,

              - against -

GLENN S. GOORD, Commissioner of New York
State Department of Correctional Services;
BRIAN MALONE, Inspector General of the New
York State Department of Correctional Services;
CHRISTOPHER P. ARTUZ, Former Super-
intendent of Green Haven Correctional Facility;
W. TOTTEN, Captain of Green Haven
Correctional Facility; COLEMAN S. WILSON;
KENNETH G. HAFFORD, Correctional Sergeants
of Green Haven Correctional Facility; JERRY W.
SURBER; FRASHER, ROSARIO, AYOTTE,
MARTUCELLO, Correctional Officers of Green
Haven Correctional Facility; B. RODAS, B. HEALY,
CHAKRAVORTY, Correctional Medical Providers
of Green Haven Correctional Facility; and JOHN/
JANE DOES 1-? In their personal and individual
capicities,

                                    Defendants.
----------------------------------------------------------------x



02 CIV. 8906 (GAY)

**DECISION AND ORDER**

        The parties have consented to try this matter before me pursuant to 28 U.S.C. §

636(c). Plaintiff Cesar Espinal ("plaintiff") brought this action against defendants,

claiming that they, in various capacities, violated his constitutional rights under 42

U.S.C. § 1983. In particular, plaintiff alleges that all defendants except for defendants

Goord, Malone and Artuz retaliated against him by using excessive force and/or

denying him medical treatment; defendants Surber, Frasher, Rosario and Ayotte (also

denoted as "Ayotle" throughout plaintiff's submissions) used excessive force against



him; defendants Wilson and Hafford failed to prevent the assault upon him; all defendants conspired to deny him medical treatment and to harass and assault him; and defendants Goord, Malone and Artuz failed to intervene to prevent assaults upon him and promulgated a custom and/or policy pursuant to which he was subjected to illegal behavior. Before this Court is defendants' motion for summary judgment. For the reasons set forth below, defendants' motion is granted as to plaintiff's first, third, fourth, and fifth claims, as well as plaintiff's apparent Equal Protection claim. Defendants' motion is denied as to plaintiff's second claim, as against defendants Surber and Frasher.

## BACKGROUND

Plaintiff generally alleges the following facts, as taken from his complaint: At about 8:45 a.m. on or about December 17, 1999, plaintiff was involved in a physical altercation with another inmate, Castillo, at Green Haven Correctional Facility, a prison located in Stormville, New York, and administered by the New York State Department of Correctional Services ("DOCS"). As plaintiff was walking away from this incident, he was placed against the wall and searched by Correctional Officer ("C.O.") Dragoon. C.O. Williams then took custody of plaintiff so that he could be taken to the clinic for a 'fight exam'. While plaintiff was being escorted to the clinic, C.O.'s Surber, Rosario, Frasher and Ayotle, along with Sgt. Wilson and several other unnamed C.O.'s, took him away from C.O. Williams and into a room. C.O.'s Surber, Ayotle and Frasher began to slam him against the wall, verbally harass him, struck his face and strip-searched him. After the strip-search, the C.O.'s and Sgt. Wilson continued to verbally harass plaintiff,

2

striking him in the head and right leg, and repeatedly slamming him against the wall. The C.O.'s finally took plaintiff to the clinic and warned him that he should not tell anyone what had happened.

At the clinic, plaintiff told Nurse Healy that he was beaten up by the C.O.'s, but Nurse Healy disregarded this statement and instead followed the account given to her by C.O. Surber: that plaintiff had been injured from the fight with the other inmate earlier that morning. Dr. Chakravorty then tried to examine plaintiff, but plaintiff refused to be treated by this doctor and asked for another medical provider because he did not like the way Dr. Chakravorty had treated him in the past. Plaintiff did not sign a refusal-of-treatment form, and Dr. Chakravorty refused his request to see another medical provider.

Plaintiff then asked Sgt. Hafford if he could receive treatment from another doctor, and if he could be taken to the mental health unit. Sgt. Hafford denied plaintiff's requests because his medical charts indicated that he had refused medical treatment, and there was no indication of plaintiff requiring mental health treatment.

After further verbal harassment by C.O.'s Surber and Ayotle, plaintiff was taken back to his cell, at around 10:30 a.m.. He requested emergency sick-call several times, but was denied this request by C.O. Martucello. Later that evening, at about 6:20 p.m., plaintiff was brought to the clinic where his injuries were re-evaluated and an inmate injury report was prepared; this report listed the injuries to his head, right leg and wrists. Plaintiff filed Inmate Grievance Complaint ("IGC") # GH-43575-99 on December 17, 1999, claiming a retaliatory assault by Officers Surber, "Frashor (sic) and other countless security officers." In his determination dated February 3, 2000,

3

Superintendent Artuz denied the grievance based upon findings that plaintiff was not refused medical treatment, plaintiff refused to receive medical assistance and there was no evidence of unprofessional conduct and threats by the officers. On February 11, 2000, plaintiff signed the appeal form, and on April 5, 2000, his appeal was denied.

On several dates in December 1999, January 2000 and February 2000, plaintiff was scheduled to be seen by the medical department. However, he was not permitted by the C.O.'s and defendant Rodas to leave his cell for these appointments. Plaintiff filed IGC # GH-43725-00 on January 19, 2000, claiming that the facility's medical department was deliberately indifferent to his needs and deprived him medical treatment, and that he was denied medical care by prison officials and medical personnel. In his determination dated March 16, 2000, Superintendent Artuz denied the grievance, stating that plaintiff had been seen thirty-one times since October 1999, and granted the grievance only to the extent that plaintiff continue to be treated as prescribed. On April 4, 2000, plaintiff signed the appeal form, and on April 26, 2000, his appeal was denied.

On November 8, 2002, plaintiff filed the instant complaint, alleging that defendants violated 42 U.S.C. § 1983 when: (1) all defendants except for defendants Goord, Malone and Artuz retaliated against him for exercising his 1st Amendment right to file complaints and lawsuits by assaulting him and interfering with his medical treatment; (2) defendants Surber, Frasher, Rosario and Ayotle used excessive force against him in violation of his 8th Amendment rights; (3) defendants Wilson and Hafford failed to prevent or stop the assaults upon plaintiff, in violation of his 8th and 14th Amendment rights; (4) all defendants conspired to deny plaintiff medical treatment and

4

to harass and assault him, in violation of his 1st, 8th and 14th Amendment rights; and (5)

defendants Goord, Malone and Artuz failed to intervene to prevent the assaults upon

plaintiff after having actual and/or constructive knowledge of such assaults, and

promoted a custom and/or policy under which plaintiff was subjected to illegal behavior,

in violation of his 1st, 8th and 14th Amendment rights. Plaintiff also seems to allege that

defendants Goord, Malone and Artuz violated his Equal Protection rights.


# DISCUSSION

I.    SUMMARY JUDGMENT STANDARD

Local Civil Rule 56.1 (former Local Civil Rule 3(g)) reads as follows:

(a) Upon any motion for summary judgment pursuant to Rule 56 of the Federal
Rules of Civil Procedure, there shall be annexed to the notice of motion a
separate, short and concise statement of the material facts as to which the
moving party contends there is no genuine issue to be tried. Failure to submit
such a statement may constitute grounds for the denial of the motion.

(b) The papers opposing a motion for summary judgment shall include a
separate, short and concise statement of the material facts as to which it is
contended that there exists a genuine issue to be tried.

(c) All material facts set forth in the statement required to be served by the
moving party will be deemed to be admitted unless controverted by the
statement required to be served by the opposing party.

Federal Rule of Civil Procedure 56(c) further provides that summary judgment

"shall be rendered forthwith if the pleadings, depositions, answers to interrogatories,

and admissions on file together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202

(2d Cir. 1995); see generally, Celotex Corp. v. Catrett, 477 U.S. 317, 320-23 (1986).

5

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986).

The Court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved by a finder of fact because they may reasonably be resolved in favor of either party." McNeil v. Aguilos, 831 F. Supp. 1079, 1082 (S.D.N.Y. 1993), aff'd, 107 F.3d 3 (2d Cir. 1996), cert. denied, 117 S. Ct. 1721 (1997), quoting Anderson, 477 U.S. at 250. "The moving party has the burden of identifying the evidence that it believes demonstrates the absence of a genuine issue of material fact." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997), citing Celotex, 477 U.S. at 323.

In deciding whether a genuine issue of material fact exists, "the court is required to draw all inferences in favor of the party against whom summary judgment is sought." Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989). If the opposing party "propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied. Schering Corp. v. Home Ins. Co., 712 F.2d 4, 9-10 (2d Cir. 1983). "On a motion for summary judgment, a court 'cannot try issues of fact; it can only determine whether there are issues to be tried'." Cronin, 46 F. 3d at 203, quoting Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Cruden v. Bank of New York, 957 F.2d 961,

975 (2d Cir. 1992).

Pleadings submitted by *pro se* plaintiffs may be held to "less stringent standards than those applicable to formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). <u>See</u> <u>also</u> <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [the pro se plaintiff's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest."); <u>Graham v. Lewinski</u>, 848 F.2d 342, 344 (2d Cir. 1988) ("special solicitude" is afforded to *pro se* plaintiffs with regards to summary judgment motions). However, *pro se* plaintiffs are not exempt from the "rules of procedural and substantive law." <u>Traguth v. Zuck</u>, 710 F.2d 90, 95 (2d Cir. 1983). <u>See</u> <u>also</u> <u>Lee v. Coughlin</u>, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (a "pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment" (citing <u>Carey v. Crescenzi</u>, 923 F.2d 18, 21 (2d Cir. 1991)).

## II.    EXHAUSTION

Under the Prison Litigation Reform Act ("PLRA"), a prison inmate who brings a lawsuit about prison life "must exhaust all institutional administrative remedies before commencing a section 1983 action." <u>Freeman v. Goord</u>, 2004 WL 2002927, at *2 (S.D.N.Y. Sept. 8, 2004). Pursuant to 42 U.S.C. § 1997e(a),

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This exhaustion requirement applies to all inmate suits, regardless of the nature of and

7

allegations in the suits.  See Porter v. Nussle, 534 U.S. 516, 532 (2002).  Furthermore, the PLRA requires that prison officials be "afford[ed] ... time and opportunity to address complaints internally."  Porter, 534 U.S. at 524-25.  Therefore, in order for inmates to properly exhaust their grievances, they "must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures."  Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004).

The New York State DOCS has a well-established, three-tiered administrative procedure for inmate grievances, called the Inmate Grievance Program ("IGP").  See 7 N.Y.C.R.R. § 701.7.  In accordance with this procedure, an inmate must first present his complaint to the Inmate Grievance Resolution Committee ("IGRC").  See 7 N.Y.C.R.R. § 701.7(a).  Next, the inmate may appeal the IGRC's determination to the superintendent.  See 7. N.Y.C.R.R. § 701.7(b).  Finally, the inmate may "subsequently appeal the superintendent's determination to the Central Office Review Committee ("CORC")."  Freeman, 2004 WL 2002927, at *3; see 7 N.Y.C.R.R. § 701.7(c).  All three of these steps must be completed in order to satisfy the PLRA's exhaustion requirement.

### 1.    Additional Defendants

In the instant matter, plaintiff exhausted his grievances against defendants Surber and Frosher by pursuing IGC # GH 43575-99 through appeal to the CORC. However, neither this grievance, nor IGC # GH 43725-00, named any other individual defendants.  In IGC # GH 43575-99, plaintiff made vague references to "other countless security officers."  Decl. of Lisa E. Fleischmann, Exh. J, Grievance.  In IGC #

8

GH 43725-00, plaintiff only referred to "Green Haven's Medical Dept.," "prison officials," and "medical personal (sic)." Id., at Exh. I, Grievance.

Plaintiff's Section 1983 complaint includes more detail than the two grievances filed in 1999 and 2000. However, the Court finds that "[t]he allegations in [plaintiff's] section 1983 complaint [] are specific and were capable of being addressed in the [Department of Corrections] grievances procedures." Brewer v. Jones, 2004 WL 235269, at *3 (S.D.N.Y. Feb. 5, 2004). Plaintiff's complaint sets forth allegations against additional defendants that were never grieved, nor pursued to exhaustion. See id. "For [defendants] now to have to litigate a federal lawsuit premised on allegations that either were never made below ... would make a mockery of the exhaustion requirement." Luckerson v. Goord, 2002 WL 1628550, at *2 (S.D.N.Y. Jul. 22, 2002).

Although plaintiff now raises more specific allegations against additional specific individual defendants, the Court finds that these allegations were capable of having been raised, investigated and addressed through DOCS' inmate grievance program, particularly given the fact that even now, several years after the alleged incidents took place, plaintiff is able to remember the names of the officers he claims to have taken part in the incidents. Moreover, because DOCS was "never afforded the opportunity to consider, and potentially resolve, these matters prior to the commencement of litigation," the Court finds that plaintiff has not exhausted his claims against defendants other than defendants Surber and Frosher. Therefore, plaintiff's claims against defendants other than defendants Surber and Frasher must be dismissed without prejudice, as required by PLRA section 1997e(a). See Brewer, 2004 WL 235269, at *3. Accordingly, defendants' motion for summary judgment is granted as to plaintiff's first,

third, fifth and Equal Protection claims, as against all defendants except for defendants Surber and Frasher.

## 2. Unexhausted Claims

The Second Circuit Court of Appeals recently determined that the PLRA "does no divest district courts of jurisdiction over actions containing unexhausted claims," thus settling the question of whether or not courts are required, under a 'total exhaustion' rule, to dismiss an inmate action entirely in cases where otherwise viable and fully-exhausted claims exist with unexhausted claims. Ortiz v. McBride, 380 F.3d 649, 656 (2d Cir. 2004). The Court of Appeals concluded that "section 1997e is too ambiguous to sustain the conclusion that Congress intended to require district courts to dismiss any prisoner's action containing one or more unexhausted claims rather than to dismiss only the offending claims." Id., at 657-58. The Court of Appeals also noted that an inmate's unexhausted section 1983 claims, "once dismissed, are unlikely ever to be revived in district court," thus not raising concerns for judicial economy, and set forth its expectation that "once the district court dismisses the unexhausted claims, it will proceed directly to decide the exhausted claims." Id., at 662-63. In other words, "a district court is expected ... to address the exhausted claim and dismiss the unexhausted claim without prejudice." Leacock v. City of New York, 2005 WL 323723, at * (S.D.N.Y. Feb, 10, 2005), citing Ortiz, 380 F.3d at 663.

In the case at bar, the only remaining claims are plaintiff's retaliation, excessive force and conspiracy claims, as against defendants Surber and Frosher. Of these, plaintiff has failed to exhaust the last claim wherein he alleges that defendants Surber

10

and Frosher conspired to deny him medical treatment, and to harass and assault him, in violation of his 1st, 8th and 14th Amendment rights. Plaintiff did not assert a complaint of conspiracy in either of the inmate grievance complaints he filed in 1999 and 2000. Thus, the conspiracy claim that he raises in the instant federal lawsuit was never taken through the proper channels provided by the IGP established by DOCS.

Plaintiff also fails to raise a valid argument regarding why he neglected to raise his conspiracy complaint in either of the grievances he filed; in fact, in his reply papers, plaintiff does not address the fact that his conspiracy claim is unexhausted. The Second Circuit Court of Appeals has set forth a three-part inquiry to be used when an inmate seeks to counter a defendant's argument that he failed to exhaust administrative remedies under the PLRA. See Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004). First, the court must determine "whether administrative remedies were in fact available to the prisoner." Id., at 686. This question is an objective one in which the court should ask whether "a similarly situated individual of ordinary firmness [would] have deemed them available." Id., at 688. Next, the court should inquire as to "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." Id., at 686. Finally, if a court finds that administrative remedies were available to the plaintiff, and the second question is answered in the negative, "the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." Id. (citation omitted).

Here, the Court finds that as an inmate at Green Haven Correctional Facility, administered by the New York State DOCS, plaintiff had the DOCS grievance process available to him at all times. Further, defendants did not forfeit the affirmative defense of plaintiff's non-exhaustion, nor is there any evidence that their own actions inhibited plaintiff's potential exhaustion of the available administrative remedies. Finally, the Court determines that plaintiff has not shown any "special circumstances" that would justify his failure to exhaust his conspiracy claim. Id.

Plaintiff appears to argue that all of his claims – presumably including his conspiracy claim – are exhausted because (1) he "wrote letters directly to the facility superintendent and Inspector General's Office;" (2) he could not ascertain the names of the other defendants within the required fourteen-day grievance filing period; (3) the grievance procedure was "an exercise in futility;" and (4) he was only required to "file a complaint with defendant's (sic) supervisor and the supervisor was required to initiate the grievance process." Plt.'s Memo. of Law in Opp., at pp. 2-5. However, the law is clearly established that "the inmate grievance procedures ... do not provide for amended grievances in the form of a letter to an institution's superintendent." Freeman v. Goord, 2004 WL 2709849, at *3 (S.D.N.Y. Nov. 23, 2004). Moreover, a plaintiff is required to exhaust his claims, "even if [he] subjectively believes that exhaustion is futile." Id. See also Giano v. Goord, 250 F.3d 146, 150-51 (2d Cir. 2001) ("the alleged ineffectiveness of the administrative remedies that are available does not absolve a prisoner of his obligation to exhaust such remedies when Congress has specifically mandated that he do so"); Leal v. Johnson, 315 F. Supp.2d 345, 347 (W.D.N.Y. 2004) ("42 U.S.C. § 1997e(a) does not require that the remedies provided by the prison be

12

effective from the prisoner's viewpoint. The statute requires only that the inmate first exhaust the remedies, however futile such exhaustion might appear to be."); Wagnoon v. Johnson, 2004 WL 583764, at *3 (S.D.N.Y. Mar. 23, 2004) ("Exhaustion of administrative remedies is required even if an inmate believes that such exhaustion would be futile.").

Finally, plaintiff's argument that he could not ascertain the names of the other individual defendants in the time required by the grievance procedures is without merit. As defendants correctly point out, plaintiff could have sought an exemption to the fourteen-day time period after the incident of which he grieves, but he failed to do so. See Plt.'s Exh. 6, Directive 4040, V.A.1. Furthermore, plaintiff appears to have encountered no problems when filing his grievances in 1999 and 2000; there is no evidence before this Court indicating that plaintiff was inhibited from filing additional grievances or otherwise exhausting the administrative remedies made available to him. Therefore, the Court finds that because plaintiff's fourth claim of conspiracy against defendants Surber and Frasher is unexhausted, it must be dismissed without prejudice, and summary judgment granted on this issue in favor of defendants Surber and Frasher.

## III.  EXHAUSTED CLAIMS

### 1.  Retaliation

In order to establish a claim of retaliation, a plaintiff must show: "(1) that his actions were protected by the Constitution or federal law, and (2) that the defendant took some adverse action against him in response to that protected activity." Crawford

v. Braun, 2001 WL 127306, at * (S.D.N.Y. Feb. 9, 2001), citing Posr v. Court Officer Shield No. 207, 180 F.3d 409, 418 (2d Cir. 1999).

Retaliation claims by prison inmates "must be treated with skepticism" because "prisoners can claim retaliation for every decision they dislike." Salahuddin v. Mead, 95 Civ. 8581, 2002 WL 1968329, at *3 (S.D.N.Y. Aug. 26, 2002). See Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983); Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). Therefore, a claim of retaliation "must not be wholly conclusory . . . and must include highly detailed factual allegations." Salahuddin, 2002 WL 1968329, at *3 (citing Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) (internal citations omitted). Merely alleging the "ultimate fact of retaliation in a conclusory manner is insufficient." Soto v. Iacovino, 2003 WL 21281762, at *2 (S.D.N.Y. Jun. 4, 2003). Moreover, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001). Where there is no chilling effect upon the exercise of constitutional rights, "the conduct is de minimis, and is outside the ambit of constitutional protection." Dawes, 239 F.3d at 492.

If the plaintiff is able to carry his initial burden, "the defendants must show by a preponderance of the evidence that they would have disciplined the plaintiff 'even in the absence of the protected conduct.'" Graham, 89 F.3d at 79 (quoting Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 287 (1977). State actions taken for both valid and invalid reasons "will not be deemed unconstitutional if the action would have been taken in any event for the constitutionally valid reason[s]." LaBounty v. Gomez, 94 Civ. 3360, 1997 WL 104959, at *5 (S.D.N.Y. Mar. 10, 1997). See also Graham, 89 F.3d at 79.

14

Courts in this Circuit recognize the presumption "that a prison official's acts to maintain order are done for a proper purpose." Rivera v. Senkowski, 62 F.3d 80, 86 (2d Cir. 1995). Therefore, "even assuming retaliatory motive, the defendants would be entitled to summary judgment 'if there were proper, non-retaliatory reasons for [plaintiff's] punishment.'" Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir. 1998) (quoting Graham, 89 F.3d at 81).

Here, plaintiff alleges that defendants Surber and Frasher retaliated against him because he exercised his First Amendment rights. On or about June 2, 1998, plaintiff filed a federal lawsuit against several DOCS defendants, including defendant Surber. See Plt.'s Exh. D. Subsequently, on or about March 24, 1999, plaintiff sent a letter of complaint to the Superintendent of Green Haven Correctional Facility. See Plt.'s Exh. 2. On May 12, 1999, Lieutenant W. Russett, on behalf of Deputy Superintendent G. Schneider, wrote a letter to plaintiff explaining that an "extensive investigation" had taken place, and the findings indicated that "the things that [plaintiff says] happened ... were precipitated by [him] and no one else." Id. Plaintiff's federal complaint (No. 93 Civ. 2579) was dismissed by United States District Judge Robert P. Patterson on June 14, 1999. Plaintiff's retaliation claim stems from the incident on December 17, 1999, when defendants Surber and Frasher allegedly assaulted him and during the course of the assault, shouted at him, "this is what happens to Inmates when they submit law suits (sic) against us." Complaint, ¶ 11.

A.    Protected Activity

It is well-established that filing a grievance against a prison officer is activity protected by the First and Fourteenth Amendments. See Graham, 89 F.3d at 80;

Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988).  Thus, defendants correctly concede that plaintiff engaged in protected activity when he filed his federal lawsuit in 1998 and when he wrote his letter of complaint to the Superintendent's office in March 1999.  See Bounds v. Smith, 430 U.S. 817, 821-32 (1977); Amaker v. Goord, 2002 WL 523371, at *14 (S.D.N.Y. Mar. 29, 2002).  Accordingly, the Court finds that plaintiff has satisfied the first element of his retaliation claim.

> B.     Adverse Action and Causal Connection

Plaintiff's retaliation claim fails, however, because he has not shown sufficient evidence from which a jury could infer that defendants acted adversely to him because he engaged in protected activity.  Some factors that may be considered when determining whether a causal connection exists between the plaintiff's protected activity and the alleged retaliatory action include: "(1) the outcome of any hearing concerning the allegedly retaliatory charges; (2) the inmate's prior disciplinary record; (3) any statements made by the defendant concerning his motivation; and, (4) the temporal proximity between the protected activity and the defendant's adverse action."  Williams v. Muller, 2001 WL 936297, at * (S.D.N.Y. Aug. 17, 2001), citing Colon v. Coughlin, 58 F.3d 865, 872-73 (2d Cir. 1995).  In the case at bar, at least three of these four factors favor summary judgment for defendants.

First, the record indicates that a thorough hearing was conducted regarding the December 17, 1999 incident.  See Decl. of Lisa E. Fleischmann, Exh. D ("Proceedings, 12-22-99;" "Proceedings, 12-23-99;" "Proceedings, 12-30-99").  Plaintiff was afforded the opportunity to question witnesses, including Castillo and C.O. Dragoon.  See id., Exh. D ("Proceedings, 12-23-99").  On the final day of these hearings, plaintiff pled

guilty to four of the five charges pending against him: possession of an altered item, possession of a weapon, possession of contraband, and tampering with property. See id., Exh. D ("Proceedings, 12-30-99"), at 4-5. Plaintiff pled not guilty to the charge of vandalism and possession of stolen property. See id., Exh. D ("Proceedings, 12-30-99"), at 5. After plaintiff did not present a defense or witnesses, the hearing officer rendered a disposition of guilty on the final charge of vandalism and possession of stolen property. See id., at 8-9. Plaintiff stated that he understood the disposition against him and signed the disposition sheet. See id., at 9. Plaintiff does not now allege that any aspect of this hearing process was tainted or infirm in any manner.

Second, plaintiff's disciplinary record demonstrates a lengthy history of misbehavior, beginning on December 19, 1991 and continuing to at least December 11, 2002. See Plt.'s Exh. 3. The charges against plaintiff include drug possession, fighting, violent conduct, possession of contraband, possession of a weapon, drug use, disobeying a direct order, creating a disturbance, and possession of an altered item. See id. Hearings were conducted with respect to each of these incidents, and plaintiff received a variety of sentences, including keep-lock and loss of privileges such as receiving packages and commissary rights. See id.

Third, the Court notes that the alleged assault upon plaintiff took place on or about December 17, 1999, almost a year and a half after the date on which he filed his federal lawsuit against defendant Surber and others, about nine months after he complained to the Superintendent of Green Haven Correctional Facility about "conspiratorial harassment," and over six months after his 1998 federal lawsuit was dismissed. The Court finds that the time periods between plaintiff's protected activities

17

of filing lawsuits and complaints, and the allegedly retaliatory actions of assault on December 17, 1999, are too lengthy and the temporal relationship too attenuated to establish a causal connection. See Crawford, 2001 WL 127306, at *6.

Moreover, plaintiff has presented no evidence that defendant Frasher possessed knowledge about the 1998 lawsuit against defendant Surber and others. Nor has plaintiff demonstrated that Frasher was motivated by a retaliatory animus when he allegedly participated in the December 17, 1999 incident. Accordingly, plaintiff's retaliation claim must be dismissed, and defendants Surber and Frasher are entitled to summary judgment on plaintiff's retaliation claim.

2.    Excessive Force

Plaintiff complains that defendants Surber and Frasher used excessive force against him on December 17, 1999, in violation of his Eighth Amendment rights. Plaintiff points to the injuries he sustained to his head, face, wrists and right knee. Defendants deny these allegations, and claim that plaintiff's injuries stemmed instead from his own conduct and participation in the physical confrontation with inmate Castillo on December 17, 1999. Defendants also argue that the injury to plaintiff's right knee was a pre-existing injury, requiring surgery prior to any alleged incidents involving defendants on December 17, 1999.

The Court finds that genuine issues of material fact remain regarding, but not limited to, the cause of plaintiff's injuries sustained on December 17, 1999. Accordingly, defendants' motion for summary judgment is denied as to plaintiff's excessive force claim.